UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-33 |
| Plaintiff, | Hon. Robert J. Jonker<br>U.S. District Judge |
| v. | |
| JEREMY LEE HEINKEL, | |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**

I.   **Introduction**

This Report and Recommendation (R&R) addresses Defendant Jeremy Lee Heinkel's motion to dismiss a Petition for Warrant or Summons for Offender Under Supervision submitted by U.S. Probation on January 26, 2023.  (ECF No. 98 (moving to dismiss ECF No. 90).)

On September 20, 2017, a federal grand jury returned an indictment charging Heinkel with Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. §§ 113(a)(6), 113(b)(2), 1151, and 1153.  (ECF No. 1, PageID.1.)  Following a bench trial on February 9, 2018, the Court found Heinkel guilty of this charge.  (ECF No. 42, PageID.69 (Verdict).)  On June 4, 2018, the Court sentenced Heinkel to fifty-four months of imprisonment followed by three years of supervised release.  (ECF No. 48, PageID.130-131.)

On November 26, 2021, Heinkel was released from custody, and began his term of supervised release. (ECF No. 58, PageID.246.) On January 12, 2022, U.S. Probation Officer Roberts submitted a Petition for Warrant or Summons for Offender Under Supervision based upon his belief that Heinkel had violated various conditions of his supervised release. (ECF No. 63.) A warrant was issued. (ECF No. 64.) On May 31, 2022, Heinkel pleaded guilty to violating the conditions of his supervised release by using and possessing marijuana and methamphetamine, failing to arrange for the installation of location monitoring technology, failing to attend his substance abuse assessment, and failing to participate in the phase testing program. (ECF No. 85, PageID.297-299.) The Court revoked Heinkel's term of supervised release and committed him to the custody of the Bureau of Prisons for twelve months to be followed by a twenty-four-month period of supervised release with special conditions. (*Id.*, PageID.300-301.) The first mandatory condition of Heinkel's supervised release was that Heinkel "must not commit another federal, state, or local crime." (*Id.*, PageID.301.)

On July 1, 2022, while Heinkel was serving the twelve-month term of imprisonment that the Court imposed after revoking Heinkel's supervised release, Heinkel was accused of assaulting another inmate in the jail. (ECF No. 90, PageID.313.) Heinkel was charged with and convicted of aggravated assault in the 78th District Court, White Cloud, Michigan. (*Id.*, PageID.312.) On January 26, 2023, Officer Roberts filed the aforementioned Petition for Warrant or Summons for Offender Under Supervision (ECF No. 90) based on the July 1, 2022 assault. (*Id.*)

Heinkel now moves to dismiss the January 26, 2023 petition. (ECF No. 98 (moving to dismiss ECF No. 90).) Heinkel contends that he was not subject to the conditions of supervised release while he was in custody. (*Id.*, PageID.325.) Heinkel asserts that "confinement and supervised release do not and cannot run simultaneously." (*Id.*, PageID.326.) In response, the Government argues that once supervised release begins, "the district court's supervisory authority continues until the defendant's supervised release terminates or expires." (ECF No. 99, PageID.333.) As such, "the court's ability to police violations of the release's conditions also continues." (*Id.*, PageID.334.)

The undersigned respectfully recommends that the Court deny Heinkel's motion to dismiss (ECF No. 98). In the opinion of the undersigned, the Court's supervisory authority continued throughout the twelve-month term of imprisonment the Court imposed after revoking Heinkel's supervised release, and the Court may therefore consider Heinkel's alleged violation of the conditions of his supervised release that occurred on July 1, 2022.

II.    Analysis

At first glance, Heinkel's position in moving to dismiss the January 26, 2023 petition appears to be sound. Section 3583(a) of Title 18 of the United States Code permits the court to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release *after* imprisonment." And 18 U.S.C. § 3624(e) provides that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal,

3

State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." Therefore, according to Heinkel, imprisonment and supervised release are distinct vehicles that do not operate simultaneously; either you are in prison and not subject to the conditions of supervised release, or you are on supervised release and subject to its conditions.

But Heinkel's position ignores the well-settled rule that once supervised release begins, the court's supervisory authority over the defendant continues unbroken until supervised release expires or is otherwise terminated by the court. The undesigned acknowledges that supervised release "commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). The Supreme Court's decision in *Johnson v. United States*, 529 U.S. 53, 57 (2000) ("*Johnson I*"), addressed the question of when supervised release commenced. But *Johnson I* did not speak to the court's supervisory authority following the start of supervised release, nor did it speak to the effect of revocation on the court's supervisory authority.

The Supreme Court addressed the distinction between a termination of supervised release and a revocation of supervised release in *Johnson v. United States*, 529 U.S. 694 (2000) ("*Johnson II*"). There, the Court explained that when supervised release is terminated in accordance with 18 U.S.C. § 3583(e)(1), it loses all effect; the court no longer retains any supervisory authority over the defendant. *Id.* at 705-706. But when supervised release is revoked in accordance with 18 U.S.C. § 3583(e)(3), the order of supervised release "continues in some sense after revocation even when part of it is served in prison." *Id.* at 706. Stated differently, revocation of supervised

4

release does not terminate or otherwise undermine the Court's supervisory authority over the defendant. The Sixth Circuit confirmed as much in *United States v. Cross*, 846 F.3d 188 (6th Cir. 2017), and *United States v. Sterling*, Case No. 21-2707, 2022 WL 1112775, at *1 (6th Cir. April 14, 2022).

In *United States v. Cross,* the district court revoked the defendant's supervised release after learning that the defendant violated the conditions of his supervised release by possessing controlled substances. 846 F.3d at 189. The defendant was ordered to serve eight months in prison in connection with the revocation. *Id.* After the defendant was released from custody, the court learned that prior to serving the eight-month prison term, the defendant had again violated the conditions of his supervised release by committing theft. *Id.* Based on that theft, the court revoked supervised release for a second time. *Id.* The defendant claimed that the second revocation was unlawful. He argued that revocation results in two, distinct terms of supervised release; the first, a term preceding revocation, and the second, a term following the defendant's release from post-revocation incarceration. *Id.* at 191. And, according to the defendant, the court could not revoke the second term of supervised release based on a violation occurring in the first term. *Id.* The court of appeals, however, rejected the defendant's position and affirmed the district court's judgment, explaining that:

> Revocation . . . revokes only the release part of supervised release; the district court's supervisory authority continues until the defendant's supervised release terminates or expires. And because the district court's authority continues throughout the defendant's supervised release, so too does the court's ability to police violations of the release's conditions.

5

846 F.3d at 190.

In *United States v. Sterling*, the defendant presented largely the same argument as the defendant in *Cross*. In *Sterling*, the district court revoked the defendant's supervised release after he failed to obey the mandatory reentry program and mental health treatment requirements. 2022 WL 1112775, at *1. Later, the court learned that the defendant had also committed a state crime. The court revoked the defendant's supervised release for a second time based on this new information. *Id.* The added wrinkle in *Sterling* was that the defendant was in custody on the state conviction when the second revocation occurred. *Id.* In addition to contending that his supervised release could not be revoked for a second time based on conduct occurring before the first revocation, the defendant in *Sterling* took the position that 18 U.S.C. § 3624(e) divested the court of jurisdiction while he was in state custody. *Id.* at *2. The court of appeals again rejected the defendant's position, explaining that § 3624(e) is a tolling provision governing when the defendant's supervision elapses; "it does not alter the existence or scope of a district court's jurisdiction during that period." *Id.*

Heinkel attempts to distinguish *Cross* and *Sterling* by pointing out the defendants were not in custody at the time of the relevant supervised release violations. (ECF No. 98, PageID.327.) But Heinkel's premise — that "confinement and supervised release do not and cannot run simultaneously," even when confinement follows revocation — is the same premise that the Sixth Circuit rejected in *Cross* and *Sterling*. As explained in *Sterling*,

6

> once supervised release begins, we treat a court's supervisory authority as ***an unbroken chain*** rather than independent pieces. That is so even if revocations occur in the interim. And that is why we have already rejected the premise "that time spent in prison (after a revocation) is not part of the defendant's supervised release" for jurisdictional purposes.

2022 WL 1112775, at *2 (emphasis added) (quoting *Cross*, 846 F.3d at 191).

Ultimately, the courts have reiterated time and time again that a revocation of supervised release does not alter the court's supervisory authority. Although the order of supervised release may contain conditions that are impracticable while a defendant is in custody, one thing is certain: refraining from further criminal activity is not one of those conditions.

### III.  Recommendation

In the opinion of the undersigned, this Court's supervisory authority continued throughout the twelve-month term of imprisonment the Court imposed on Heinkel for violating the terms of his supervised release, and the Court may therefore consider Heinkel's alleged violation of the conditions of his supervised release that took place on July 1, 2022, while he was in the Newaygo County Jail. Therefore, the undersigned respectfully recommends that the Court deny Heinkel's motion to dismiss (ECF No. 98).

Dated: March 24, 2023                                /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); W.D. Mich. LCrR 57.1(b). Failure to file timely objections constitutes a waiver of any further right to appeal. Fed. R. Crim. P. 59(b)(2).